PROB 12C
11/03

# UNITED STATES DISTRICT COURT
## for the
## Middle District of North Carolina

## Amendment to Petition for Summons Originally Filed on May 5, 2021

Name of Offender: KEVIN CLARK MOORE      Case Number: 1:09CR163-1

Name of Sentencing Judicial Officer:    The Honorable William L. Osteen, Jr.

Date of Original Sentence:      January 26, 2010

Original Offense:    Count 1: Bank Robbery in violation of 18 U.S.C. § 2113(a).

                   Count 2: Bank Robbery in violation of 18 U.S.C. §§ 2113(a) & (2).

Original Sentence:    151 months imprisonment as to Count 1 and 151 months as to Count 2 to run concurrently with the sentence imposed as to Count 1, followed by 3 years supervised release as to Count 1 and 3 years supervised release as to Count 2 to run concurrently with the sentence imposed as to Count 1.

Type of Supervision: Supervised Release      Date Supervision Commenced: April 20, 2020
                                                                      Date Supervision Expires: April 19, 2023

Assistant U.S. Attorney: Anand Prakash Ramaswamy      Defense Attorney: Lisa S. Costner

## PETITIONING THE COURT

[X]    To amend the petition originally filed on May 5, 2021. This Amended Petition shall be unsealed upon the issuance of an Order in response to this Amended Petition.

The probation officer believes that Mr. Moore has violated the following condition(s) of supervision:

**Violation 1 - The defendant shall not commit another federal, state or local crime.**

On February 25, 2021, Mr. Moore was cited by the Randolph County, NC, Sheriff's Office for Misdemeanor Driving While License Revoked (21CR701222). The offense date was February 25, 2021. This charge is pending in Randolph County District Court.

Mr. Moore contacted the probation officer on February 25, 2021, and reported his contact with law enforcement. He admitted to driving without a license and that he cooperated with the officer. The probation officer conducted a home contact on March 2, 2021, and this new criminal charge was discussed further with Mr. Moore. The probation officer and Mr. Moore had previously discussed that he could not operate a motor vehicle until licensed to do so, and he advised he was abiding by that instruction. Mr. Moore's mother, Renee Day, advised the incident on February 25, 2021, was her fault in that she allowed Mr. Moore to drive so he could practice for his upcoming driving test.

**Violation 2 - The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.**

On May 20, 2020, Mr. Moore contacted the probation officer and reported he was using methamphetamine.  He advised he started using methamphetamine when he was placed on home confinement by the Bureau of Prisons (BOP) prior to his release date in April 2020.  Mr. Moore advised he continued his use once released to supervision, and he was using approximately three to four grams of methamphetamine every weekend.

He admitted to being deceptive to the probation officer when questioned about his illegal drug use and stated he was receptive to substance abuse treatment, possibly at a residential inpatient facility.  The probation officer reinforced Mr. Moore's honesty and request for treatment.  He was given referrals to FIRST at Blue Ridge (FIRST), Residential Treatment Services of Alamance, and Addiction Recovery Care Association.

The probation officer discussed approaches to staying sober until Mr. Moore could begin treatment.  Mr. Moore was able to identify his mother, step-dad, and the owner of his employment as prosocial supports.  He advised when he disclosed his illegal drug use to the owner of his employment, he in turn disclosed to Mr. Moore that he himself was a recovering addict of 30 years.  The probation officer encouraged Mr. Moore's use of his support team; however, there was a discussion about the difference between enabling and helping and that it was vital his support team held Mr. Moore accountable.

Mr. Moore admitted to snorting methamphetamines between June 25 and June 28, 2020.  He further verbally admitted to methamphetamine use between July 16 and July 18, 2020, and again on July 24, 2020.  He tested positive for marijuana on three occasions:  October 7, November 3, and November 17, 2020.  On November 2, 2020, he admitted to "smoking marijuana all weekend".  Mr. Moore admitted to the probation officer on January 5, 2021, that he had used methamphetamine on January 1 and January 2, 2021.

On February 9, 2021, Mr. Moore denied any illegal drug use and submitted to a urinalysis.  On February 19, 2021, the drug testing laboratory advised the specimen was positive for marijuana and amphetamines.  Mr. Moore continued to deny using these substances, and reported he had been sober for 46 days.  The probation officer submitted the specimen to Alere Toxicology for confirmation.  On March 2, 2021, the sample was confirmed positive for marijuana and methamphetamines.  On March 4, 2021, the probation officer contacted Mr. Moore to discuss these results.  Initially, he continued to deny any illegal drug use; however, at the end of the conversation he verbally reported he had used the illegal drugs and he signed and admission statement.  The probation officer disapproved of Mr. Moore's initial dishonesty due to the amount of time that had lapsed, which inhibits the probation officer and the treatment provider in applying appropriate interventions.

Mr. Moore reported to the probation office as directed on May 11, 2021, so the Summons could be served on him.  He submitted to a drug test and admitted to using marijuana and methamphetamine prior to being tested.  Mr. Moore advised he started using marijuana and methamphetamine after the probation officer last met with him on April 1, 2021, and his last methamphetamine use was on May 9, 2021.  The drug test yielded positive results for marijuana and methamphetamine which verified Mr. Moore's admission.

On June 2, 2021, the probation officer met with Mr. Moore who admitted to continued use of marijuana and reported his last marijuana use as May 30, 2021.

**Violation 3 - The defendant shall cooperatively participate in a mental health treatment program, which may include inpatient/residential treatment, and pay for treatment services, as directed by the probation officer**.

On May 21, 2020, the probation officer referred Mr. Moore to Daymark Recovery Services (DRS) for a comprehensive mental health assessment (which includes a substance abuse assessment). Mr. Moore's mental health assessment was scheduled for May 28, 2020. To his credit, Mr. Moore completed the assessment via a virtual platform due to the pandemic. Subsequently, Dr. Petway with DRS reported Mr. Moore was concerned about the treatment plan impacting his employment negatively; therefore, she recommended that he attend and complete a 40-hour outpatient substance abuse program. The probation officer inquired specifically about a mental health recommendation. Dr. Petway advised Mr. Moore reported a minimal mental health history which included some depression. The probation officer referred Dr. Petway to the referral letter submitted by the probation officer which detailed more than just a minimal mental health history.

The probation officer made several phone calls to DRS regarding the start of Mr. Moore's treatment program. On June 22, 2020, the probation officer spoke with Heather Hedrick, Director of DRS, regarding the failure to return the probation officer's calls and failure to address mental health for Mr. Moore. Ms. Hedrick scheduled Mr. Moore for group orientation on June 29, 2020. Regarding mental health, she advised mental health would be addressed in Mr. Moore's substance abuse groups as DRS believes these two issues were related. On July 2, 2020, the probation officer amended Mr. Moore's treatment plan to include a psychiatric evaluation. DRS would not schedule Mr. Moore's psychiatric evaluation until he attended two substance abuse treatment groups, and Mr. Moore was aware of this. Mr. Moore attended group orientation on June 29, 2020, and his first two substance abuse groups on July 14 and 16, 2020. Mr. Moore did not attend any treatment groups after July 16, 2020. He reported technical issues with accessing the link to join the groups virtually and that he did not did not like the groups. On September 3, 2020, Mr. Moore was unsuccessfully discharged from DRS for failure to attend.

Mr. Moore was accepted into FIRST, which is a 12-month residential inpatient treatment program. He reported as directed on October 12, 2020. On November 2, 2020, the probation officer was notified that Mr. Moore left the program against staff advice. Mr. Moore advised FIRST staff that he no longer wanted to be there, and that he had previously missed 12 Thanksgiving and Christmas holidays due to his incarceration and he wanted to be with his family. Mr. Moore's mother came and picked him up from FIRST.

**Violation 4- The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.**

The probation officer became aware of Mr. Moore having contact with the High Point, NC, Police Department (HPPD) on September 19, 2020. According to HPPD, officers responded to a call at that Budget Inn regarding two individuals who were seen in the stairwell using hypodermic needles which presumably contained drugs. The probation officer followed up with personnel at the Budget Inn, who advised that Mr. Moore rented a room there for two nights under the name Clark Moore. His room was a source of troubling activity which included possible prostitution and illegal drug use. Mr. Moore was asked to leave the property by security, and Budget Inn issued him a ban notice. Security searched the vacated room and located cocaine and marijuana. Approximately three hours later, Mr. Moore was seen back on the property, and that is when HPPD was contacted. The probation officer asked Mr. Moore about this incident, and he admitted to renting a room to spend time with a female. He advised he was removed from his room as the female was deemed a known prostitute by Budget Inn. Mr. Moore advised he had nowhere to go, so he sat outside the motel at a table. He advised when HPPD officers arrived he was told he was banned from the property and was told to leave. Mr. Moore advised he complied with that instruction, and he denied participating in prostitution or illegal drug activity. He failed to notify the probation officer of his contact with law enforcement. No charges were filed.

**Violation 5 - The defendant shall submit to substance abuse testing, at anytime, as directed by the probation officer. The defendant shall cooperatively participate in a substance abuse treatment program, which may include drug testing or inpatient/residential treatment, and pay for treatment services, as directed by the probation officer. During the course of treatment, the defendant shall abstain from the use of alcoholic beverages.**

After Mr. Moore left FIRST, he chose a non-contracted provider, RHA Health Services (RHA), for substance abuse and mental health services. He completed a mental health assessment with them on November 7, 2020. RHA recommended participation in their Substance Abuse Intensive Outpatient Program (SAIOP), which meets three times a week for three hours over a three-month period. Mr. Moore was also required to attend NA, submit to random urinalyses, and he was assigned a peer support specialist. He was scheduled to see their psychiatrist on November 24, 2020, to begin Medication Assisted Treatment (MAT) in which Suboxone would be prescribed. The probation officer questioned the prescription, as the probation officer understands Suboxone is for opiate addicts. RHA advised Mr. Moore reported he was 38 days sober; however, was using ½ a gram of heroin a day prior to this. The probation officer advised RHA that Mr. Moore has never reported heroin use to the probation, nor had he tested positive for heroin or opiate use, and the probation officer was concerned this was a drug seeking behavior. However, Mr. Moore was prescribed Suboxone (opiate addiction), Clonidine (treatment of nightmares), and Trazadone (antidepressant/sleep aid). At a follow-up meeting with Mr. Moore on December 21, 2020, he reported taking his medications as prescribed and attending all groups. He advised this level of treatment was beneficial to him.

On January 4, 2021, RHA verified Mr. Moore's participation with treatment. Despite his participation, Mr. Moore verbally admitted to using methamphetamine between January 1 through January 2, 2021. As a result, a meeting with the counselor, probation officer, and Mr. Moore was held on January 8, 2021. It was noted that Mr. Moore's attendance had been "flawless" and that he was participating in meaningful ways during group. This was Mr. Moore's second noted relapse with RHA, which operates by a "three strike" rule and the purpose of the meeting was to put Mr. Moore on notice, and to ensure he understood the expectations of the program. He was scheduled to graduate from SAIOP on February 16, 2021, and begin a step-down treatment program.

The probation officer notified RHA on March 3, 2021, that Mr. Moore's urinalysis was confirmed positive for marijuana and methamphetamines. Due to his third relapse and extensive deceit, RHA determined an increase to Substance Abuse Comprehensive Outpatient Treatment (SACOT) was appropriate. This would increase his groups to five times a week. On March 5, 2021, a second meeting was conducted, and Mr. Moore was provided three options: the SACOT program, a residential inpatient facility, or a report to the Court. On March 9, 2021, Mr. Moore contacted RHA and the probation officer and agreed to participate in SACOT. On March 31, 2021, the probation officer verified Mr. Moore's compliance, and Mr. Moore reported enjoying SACOT because the groups were smaller.

On April 21, 2021, Mr. Moore contacted the probation officer and advised he was tired of attending substance abuse treatment. He stated that treatment was interfering with his employment and school. Further, Mr. Moore reported he was frustrated with RHA because they were weaning him off his medication, so he quit taking his medication. The probation officer asked Mr. Moore if he had relapsed, which he denied. He continued to make statements regarding his frustration with RHA and further advised he would be fine if he could smoke marijuana every day. Mr. Moore advised marijuana is legal in half the country, and that he served 13 years in prison and it was unfair that he is on supervision for three years. The probation officer reviewed role clarification with Mr. Moore, and reminded him that supervision is meant to assist him and provide him with an opportunity to make prosocial changes in this life.

Subsequent to that conversation, RHA advised that Mr. Moore continued to attend and participate in SACOT. RHA had attempted to collect a urinalysis from Mr. Moore and he avoided submission. RHA discussed this avoidance with Mr. Moore on April 12, 2021, and he admitted to using methamphetamine

on or about April 8 or April 9. This was Mr. Moore's third relapse and second occurrence of deceit which led to RHA tapering him off his medication. RHA reported it is dangerous for Mr. Moore to be on the medication he is prescribed if he is using illegal drugs. This angered Mr. Moore and he discontinued his medication completely which likely contributed to his distorted thinking. RHA advised the probation officer that Mr. Moore was instructed on April 12, 2021, to inform the probation officer of his illegal drug use. RHA expressed concern that they may be setting Mr. Moore up for failure by attempting to keep his level of care as outpatient.

On May 12, 2021, the probation officer contacted RHA regarding Mr. Moore's continued drug use. RHA advised Mr. Moore had reported being sober for seven days on May 11, 2021. The probation officer advised that is not the truth and Mr. Moore just tested positive for, and admitted to using, methamphetamine and marijuana. Further, he reported obtaining Suboxone from another provider. RHA advised Mr. Moore failed to attend group that morning citing his mother had "kicked" him out of the residence. RHA unsuccessfully discharged Mr. Moore from their program on May 12, 2021, due to his continued drug use and his dishonesty.

**Violation 6 - The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

On April 21, 2021, Mr. Moore provided false information to the probation officer when he was directly asked by the probation officer if he had relapsed. He denied relapsing and using illegal substances. Later this same date, the treatment provider informed the probation officer that Mr. Moore had relapsed on or about April 9, 2021, and that he was directed by his counselor to disclose that information to the probation officer on April 12, 2021. On May 4, 2021, the probation officer followed up with Mr. Moore regarding his admission to illegal drug use to his treatment provider. Mr. Moore advised the probation officer he lied about relapsing to the treatment provider and was honest with the probation officer. The probation officer asked Mr. Moore why he would lie about relapsing to his treatment provider. Mr. Moore was unable to provide an answer for this

U.S. Probation Officer Recommendation:

[X]  The term of supervision should be
    [X]  revoked.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on  June 1, 2021

Danielle A. Cooke
U.S. Probation Officer Specialist

Approved by:

Stacey G. Burleyson  June 2, 2021
Supervisory U.S. Probation Officer  Date